Matthew Becker, SBN 262816
Ph. (916)591-5150
beckerlawpractice@gmail.com
333 University Ave #200
Sacramento, CA 95825
Fx. (916)352-6299

Attorney for Plaintiffs:
William Bernal &
Celia Bernal

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Bernal, and Celia Bernal,<br><br>Plaintiffs,<br><br>vs.<br><br>Sacramento County Sheriff Department,<br>Sacramento County Sheriff Scott Jones,<br>Sacramento County Sheriff Deputy Hinkley,<br>Sacramento County Sheriff Deputies John<br>Does # 1 through 20,<br><br>Rancho Cordova Police Department, Rancho<br>Cordova Police Department Employees John<br>Does # 21 through 40,<br><br>Folsom Police Department, Folsom Police<br>Officer Bradshaw, Folsom Police Department<br>Employees John Does # 41 through 60.<br><br>Defendants. | COMPLAINT FOR DAMAGES<br><br>1) Assault on Celia Bernal<br>2) Battery on Celia Bernal<br>3) False Imprisonment of Celia Bernal<br>4) 42 U.S.C. 1983 – Celia Bernal<br>5) Civ. Code 52.1 – Celia Bernal<br>6) Intentional Infliction of Emotional<br>   Distress on Celia Bernal<br>7) Assault on William Bernal<br>8) Battery on William Bernal<br>9) False Imprisonment of William<br>   Bernal<br>10) 42 U.S.C. 1983 – William Bernal<br>11) Civ. Code 52.1 – William Bernal<br>12) Intentional Infliction of Emotional<br>   Distress on William Bernal |

**INTRODUCTION**

This lawsuit for money damages arises out of a series of brutal and unnecessary actions by the Sacramento County Sheriff Department in conjunction with the Rancho Cordova Police Department. The Folsom Police Department was involved in the dispatching of the other two agencies and perhaps in other ways as well and acted vicariously and in conspiracy with the Sacramento County Sheriff Department and the Rancho Cordova Police Department. The

offending law enforcement agencies had heard rumor and innuendo that someone had reported that someone else had heard that someone else had been discussing the contents of text messages allegedly written by Plaintiff William and Celia Bernal's son Ryan Bernal that the eaves-dropper had interpreted to be threatening. The actions complained of herein were engaged in without benefit of a warrant against anyone or for any property of anyone.

**JURISDICTION AND VENUE**

1) The events which gave rise to this suit occurred in Sacramento County, California, a territory within the Eastern District of California.

2) The claims raised herein include claims involving a Federal Question in that there are causes of action under 42 U.S.C. 1983 involving violation of civil rights of Plaintiffs Celia Bernal and William Bernal.

**FACTS**

3) On March 5, 2018, Plaintiff Celia Bernal received a phone call from her son Ryan Bernal's school relating to rumor and innuendo that Ryan Bernal might intend to shoot people at school that day.

4) Celia also received multiple calls from an unidentified number purporting to be from the local police department regarding this same rumor and inuendo.

5) Celia advised the callers that Ryan was at his grandmother's house and that any such rumors were false.

6) On March 5, 2018, Plaintiff William Bernal received a phone call from Celia Bernal telling him to come home from Physical Therapy because something was going on possibly involving their son Ryan Bernal.

7) When William arrived home, he briefly went inside and then, William and Celia came out of the house.

8)  Celia got to their car, which has plainly visible handicap license plates, ahead of William and entered the car which was parked in her driveway. William was still walking to it.

9)  Sacramento Sheriff Department Deputies, backed up by Rancho Cordova Police Officers then swarmed the street as William was walking toward Celia in her vehicle.

10) None of the police officers identified themselves or attempted to provide official verification of their capacity or their authority to proceed in the manner described hereinafter.

11) Two Sacramento County Sheriff Deputies opened the front doors of Celia's vehicle and each reached in and grabbed her by her left and right arms respectively and began what amounted to a tug-of-war match pulling Celia in two directions at once.

12) Celia cried out to William to have him record what was going on.

13) William set his bag down on the hood of the car  and raised his cell phone, which was in his hand, to record events.

14) During the events described in #10 above, at least two other Sacramento County Sheriff Deputies assaulted William.

15) The deputies kicked William's legs apart while grabbing him by the shoulder.

16) The Deputies then kicked William's knee in while slamming his head onto the hood of the car. The deputies simultaneously grabbed William's arms, wrenched them around behind his back and handcuffed him.

17) While the deputies were doing this, Celia, sitting in the vehicle whose hood had just made repeated contact with William's face due to the deputies' violent actions, screamed to stop and informed in a loud voice that William was disabled and had a broken neck.

COMPLAINT FOR DAMAGES

18) Nonetheless, while Celia was informing the deputies to stop and why, they continued their vicious assault on William, pulling him off the hood of the car, turning his head the other direction and slamming the other side of it down.

19) After being lifted off the hood of the car by his arms that were cuffed behind his back (and putting full weight of his body on his surgically repaired shoulders), William looked to the side and stared down the barrel of an officer's firearm that was pointed at him.

20) William was then frog marched to the patrol car blocking the exit of the driveway and thrown in on the driver's side in the rear of the car, still handcuffed with his shoulders being damaged by the unnatural position that his doctor would never have permitted him to move into voluntarily.

21) Celia was still in her vehicle. An unknown deputy on her left side who had not let go of her arm that he had grabbed, yanked to full extension, and twisted so as to prevent movement. Meanwhile Deputy Hinkley began performing an "Indian Rub" on Celia's right arm which he had grabbed and twisted similarly to the other officer.

22) During the events of #7 through #18 above, no law enforcement officer even asked for the persons they were assaulting to identify themselves.

23) After William was taken to the squad car, at some point, the Deputies released their double-sided physical hold on Celia and pulled her out of the car. When Celia indicated she was having an asthma attack because of the stress of the situation and needed to sit down, a Sheriff Deputy grabbed a plastic chair off the patio and placed it down in full sunlight. Celia grabbed the chair, moved it into the shade and sat down.

24) When the Deputies involved in the violent and aggressive assault on herself and her husband attempted to communicate with her, she indicated that she refused to answer

COMPLAINT FOR DAMAGES

any questions from any police officer on scene who had been involved in the assault on herself or her husband.

25) Prior to the arrival of Folsom Police Department Officer Bradshaw, the deputies then entered, without permission, into the Bernals' RV trailer that was in the driveway and performed a search thereof without benefit of a warrant.

26) About 30 minutes after the assault began, Folsom Police Officer Bradshaw pulled up.

27) Officer Bradshaw saw the level of violence that had been going on and ordered Sacramento County Sheriff Department to cut it out and to release William from the back of the squad car.

28) Officer Bradshaw approached Celia Bernal and began interrogating her. Celia Bernal spoke to him because he was not part of the group who had violently assaulted her and her husband.

29) After substantial discussions with Officer Bradshaw, including assurances from Officer Bradshaw to Celia and William that the Folsom Police Department knew this was nothing more than a teen gossip situation, that they merely wanted to ensure Ryan's safety and assurances that no one was going to be arrested, Celia and Bill reaffirmed to Officer Bradshaw that Ryan Bernal was at her mother's house.

30) Sacramento County Sheriff Deputies and Rancho Cordova Police and Officer Bradshaw then escorted Celia and William to Celia's mother's house.

31) Based entirely on Officer Bradshaw's promise that no arrest would happen, Celia advised Ryan to come out of the house voluntarily and give a statement.

32) At the conclusion of the statement from Ryan, Officer Bradshaw went back to his car, engaged in radio communications to an unknown person, came back to Ryan and

COMPLAINT FOR DAMAGES

arrested Ryan on suspicion of terrorist threats and drafted a police report recommending felony PC 422.

33) The Sacramento County District Attorney filed information against Ryan for 5 counts of PC 422 as felonies.

34) However, rather than the 5 counts of PC 422 and a maximum of 20+ years of incarceration in CDCR, the District Attorney ultimately reduced this to a single misdemeanor charge that Ryan entered an Alford plea to with a resulting zero days of being confined in any Sacramento County incarceration facility.

35) During the events of #7 through #28, no law enforcement officer ever sought or received a warrant for any of their actions.

36) As a result of the violent, warrantless, and unreasonable actions of Defendants, William suffered significant damage to multiple surgically repaired joints in his body, several of which now require surgery in an attempt to re-repair the damage caused by Defendants.

37) William endured severe emotional distress in the form of loss of sleep, nightmares, and anxiety.

38) Celia endured severe emotional distress in the form of loss of sleep, nightmares, depression and anxiety as well as loss of trust in and fear of the law enforcement community. Celia's emotional distress caused a substantial reduction in her income potential and she lost substantial income as a result of this attack.

39) A claim was submitted pursuant to California Government Code § 910 et seq. to each of the Government Agencies who are being listed as Defendants in this complaint. These Government Tort Claims Act claims were submitted on September 5, 2018. This complaint is being filed within 6 months of the rejection of those claims.

**CAUSES OF ACTION AND STATEMENTS APPLICABLE TO ALL CAUSES STATED HEREIN IN THIS COMPLAINT**

Plaintiffs incorporate all statements above into each and every cause of action stated below as if fully restated in each cause of action. Plaintiffs list all defendants to this action as defendants in each and every cause of action. To the extent that some individuals may not have personally participated in certain specific acts, each is liable as a co-conspirator to the overall scheme of an overwhelming showing of force against persons who were not suspected of any crime.

**PART A – CELIA BERNAL AS PLAINTIFF**

**CAUSE OF ACTION (A1) – ASSAULT**

Celia Bernal alleges that Defendants assaulted her. To establish this claim, Celia Bernal must prove all of the following:
1. That Defendants acted, intending to cause harmful or offensive contact; AND
2. That Celia Bernal reasonably believed that she was about to be touched in a harmful or an offensive manner;
[or]
1. That Defendants threatened to touch Celia Bernal in a harmful or an offensive manner;
2. That it reasonably appeared to Celia Bernal that Defendant was about to carry out the threat;
3. That Celia Bernal did not consent to Defendant's conduct;
4. That Celia Bernal was harmed; and
5. That Defendant's conduct was a substantial factor in causing Celia Bernal's harm.
CACI 1301 - ASSAULT

1) Celia Bernal was exiting her home and had entered her vehicle and was awaiting her husband William Bernal to get into the vehicle.

2) Celia Bernal was approached by two Sacramento County Sheriff Deputies who opened her car doors.

3) One deputy (John Doe #1) opened the driver's side door and grabbed her by the left arm and twisted it in a counter-clockwise manner so as to prevent movement by Celia Bernal

4)  Deputy Hinkley opened the passenger side door and grabbed Celia Bernal's right arm and twisted it in a clockwise motion so as to prevent movement by Celia Bernal.

5)  Deputy Hinkley used both hands while twisting Celia Bernal's arm to give her an "Indian rub".

6)  Deputy Hinkley and Deputy John Doe #1 pulled Celia Bernal's arms in opposite directions while they were twisted in a manner that appeared to be like pulling a wishbone.

7)  Both of these Deputies acted in coordination with each other and as part of a collective action by all Defendants named in this Cause of Action.

8)  Celia Bernal perceived these actions by each of Deputy John Doe #1 and Deputy Hinkley.

9)  At no time did Celia Bernal consent to this conduct.

10) The twisting and pulling of her arms and the "Indian rub" were painful and offensive.


**CAUSE OF ACTION (A2) – BATTERY**

Celia Bernal alleges that Defendants committed a battery. To establish this claim, Celia Bernal must prove all of the following:
1. That Defendants touched Celia Bernal or caused Celia Bernal to be touched with the intent to harm or offend her;
2. That Celia Bernal did not consent to the touching; and
3. That Celia Bernal was harmed or offended by Defendant's conduct; and
4. That a reasonable person in Celia Bernal's situation would have been offended by the touching.
CACI 1300 - BATTERY

1)  Celia Bernal was exiting her home and had entered her vehicle and was awaiting her husband William Bernal to get into the vehicle.

2)  Celia Bernal was approached by two Sacramento County Sheriff Deputies who opened her car doors.

3) One deputy (John Doe #1) opened the driver's side door and grabbed her by the left arm and twisted it in a counter-clockwise manner so as to prevent movement by Celia Bernal

4) Deputy Hinkley opened the passenger side door and grabbed Celia Bernal's right arm and twisted it in a clockwise motion so as to prevent movement by Celia Bernal.

5) Deputy Hinkley used both hands while twisting Celia Bernal's arm to give her an "Indian rub".

6) Deputy Hinkley and Deputy John Doe #1 pulled Celia Bernal's arms in opposite directions while they were twisted in a manner that appeared to be like pulling a wishbone.

7) Both of these Deputies acted in coordination with each other and as part of a collective action by all Defendants named in this Cause of Action.

8) Celia Bernal perceived these actions by each of Deputy John Doe #1 and Deputy Hinkley.

9) At no time did Celia Bernal consent to this conduct.

10) The twisting and pulling of her arms and the "Indian rub" were painful and offensive.

11) Any reasonable person would be offended by being grabbed, twisted, pulled, and Indian-rubbed in the manner that these Deputy defendants acted toward Celia Bernal.

12) Any reasonable person should know that another reasonable person would be harmed or offended by being grabbed, twisted, pulled, and Indian-rubbed in the manner that these Deputy defendants acted toward Celia Bernal.

**CAUSE OF ACTION (A3) – FALSE IMPRISONMENT**

Celia Bernal alleges that she was wrongfully restrained/confined/detained by Defendant(s). To establish this claim, Celia Bernal must prove all of the following:

1. That Defendant(s) intentionally deprived Celia Bernal of her freedom of movement by use of physical barriers/force/threats of force/menace/fraud/deceit/unreasonable duress; [and]
2. That the restraint/confinement/detention compelled Celia Bernal to stay or go somewhere for some appreciable time, however short;
3. That Celia Bernal did not voluntarily consent or consent at all;
4. That Celia Bernal was actually harmed; and
5. That Defendant's conduct was a substantial factor in causing Celia Bernal's harm.
CACI 1400

Celia Bernal alleges that she was wrongfully arrested by Defendants. To establish this claim, Celia Bernal must prove all of the following:
1. That Defendants arrested Celia Bernal without a warrant;
2. That Celia Bernal was harmed; and
3. That Defendants' conduct was a substantial factor in causing Celia Bernal's harm.
CACI 1401

1) Celia Bernal was exiting her home and had entered her vehicle and was awaiting her husband William Bernal to get into the vehicle.

2) Celia Bernal was approached by two Sacramento County Sheriff Deputies who opened her car doors.

3) One deputy (John Doe #1) opened the driver's side door and grabbed her by the left arm and twisted it in a counter-clockwise manner so as to prevent movement by Celia Bernal

4) Deputy Hinkley opened the passenger side door and grabbed Celia Bernal's right arm and twisted it in a clockwise motion so as to prevent movement by Celia Bernal.

5) Deputy Hinkley used both hands while twisting Celia Bernal's arm to give her an "Indian rub".

6) Deputy Hinkley and Deputy John Doe #1 pulled Celia Bernal's arms in opposite directions while they were twisted in a manner that appeared to be like pulling a wishbone.

7) After William Bernal was handcuffed at gunpoint in front of her and placed in the rear of a squad car, Defendants Hinkley and John Doe #1 permitted Celia Bernal to

exit the vehicle and sit down on a chair in front of her garage. She was still not free to leave, a fact that was enforced by the blocking of her driveway by Sheriff cars, the swarm of Sheriff Deputies present on the street and sidewalk in front of her house, and on her driveway standing in front of her, her husband being held handcuffed in a squad car, and the entire street blocked off by Defendants as well.

8) After the arrival of Folsom Police Officer Bradshaw, the phalanx of armed officers backed off to provide a modicum of space while Officer Bradshaw approached Celia Bernal.

9) Defendant Bradshaw then questioned Celia Bernal and used deceit to get Celia Bernal to provide information that any reasonable person would know would cause Celia Bernal to go to a particular location desired by Defendant Bradshaw. Previous to this point in time, Celia Bernal was not permitted to leave the front porch/front of the garage location in the driveway. After this, there was an implicit understanding that Celia Bernal was, as a result of deceit, duress, fraud, force, menace, and threat of force, going to lead the various law enforcement personnel to the person who they wished to speak to: her son Ryan Bernal.

10) Celia Bernal was free to leave only after leading the Defendants present to the address where her son Ryan Bernal was located, and through deceit, fraud and duress had been "encouraged" to talk Ryan into coming out of a house of safety to talk to these Defendants. Even then it is doubtful that she was truly free to leave in that the Defendants had deliberately blocked her car in so it was unable to be moved.

**CAUSE OF ACTION (A4) – 42 U.S.C 1983**

In order to prevail on her § 1983 claim against Defendants, the plaintiff must prove each of the following elements by a preponderance of the evidence:
    1. the defendant acted under color of state law; and

2. the act[s] of Defendant deprived the plaintiff of her particular rights under [the
United States Constitution]...

9th Circuit Model Civil Jury Instruction 9.3

Under the Fourth Amendment, a person has the right to be free from an unreasonable
search of her [person] [residence] [vehicle] [other object of search].  In order to prove the
defendants deprived the plaintiff of this Fourth Amendment right, the plaintiff must prove
the following additional elements by a preponderance of the evidence:

1. Defendants searched the plaintiff's [person] [residence] [vehicle];
2. in conducting the search, Defendants acted intentionally; and
3. the search was unreasonable.

9.12, unreasonable search

Under the Fourth Amendment, a person has the right to be free from an unreasonable
seizure of [his] [her] person.  In order to prove the defendant[s] deprived the plaintiff of
this Fourth Amendment right, the plaintiff must prove the following additional elements
by a preponderance of the evidence:

1. [name[s] of applicable defendant[s]] seized the plaintiff's person;
2. in seizing the plaintiff's person, [name[s] of same person[s]] acted
intentionally;
and
3. the seizure was unreasonable.

A defendant "seizes" the plaintiff's person when [he] [she] restrains the plaintiff's person
through coercion, physical force or a show of authority.  A person's liberty is restrained
when, under all of the circumstances, a reasonable person would not have felt free to
ignore the presence of law enforcement officers and to go about [his] [her] business.
In determining whether a reasonable person in the plaintiff's position would have felt free
to leave, consider all of the circumstances, including:

(1) the number of officers present;
(2) whether weapons were displayed;
(3) whether the encounter occurred in a public or nonpublic setting;
(4) whether the officer's manner would imply that compliance would be
compelled;
and
(5) whether the officers advised the plaintiff that [he] [she] was free to leave.

9.20, unreasonable seizure of person

Under the Fourth Amendment, a police officer may use only such force as is
"objectively reasonable" under all of the circumstances.  You must judge the
reasonableness of a particular use of force from the perspective of a reasonable officer on
the scene and not with the 20/20 vision of hindsight.   Although the facts known to the
officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant
to your inquiry.

In determining whether the officer used excessive force in this case, consider all
of the circumstances known to the officer on the scene, including:

(1) the nature of the crime or other circumstances known to the officer[s] at the
time force was applied;

(2) whether the [plaintiff] [decedent] posed an immediate threat to the safety of the officer[s] or to others;

[(3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight;]

(4) the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the type and amount of force used;

[(6) the availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff;]]

[(7) the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;]

[(8) whether it was practical for the officer[s] to give warning of the imminent use of force, and whether such warning was given;]

[(9) whether the officer[s] [was] [were] responding to a domestic violence disturbance;]

[(10) whether it should have been apparent to the officer[s] that the person [he] [she] [they] used force against was emotionally disturbed;]

[(11) whether a reasonable officer would have or should have accurately perceived a mistaken fact;]

[(12) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm; and]

[(13) insert other factors particular to the case.]

"Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

9.25, unreasonable force in seizure of person

1) All Defendant officers on scene engaged in trespass to Plaintiff's property and participated or ratified the intrusion into Plaintiff's vehicle where Celia Bernal was seated.

2) All Defendant officers on scene engaged in a search of Plaintiff's RV camper that was parked in the driveway

3) All Defendant officers on scene trespassed across at a minimum Plaintiff's front yard, searching from vantage points where they had no right to be.

4) Defendant Hinkley and Defendant Deputy John Doe #1 engaged in a seizure of Celia Bernal's person while she sat in her car when they opened the doors, reached in, and

grabbed Celia Bernal's arms, twisted her arms, and held her in place while being pried apart like a wishbone.

5) All Defendant Officers on scene engaged in a joint effort to prevent Celia Bernal from being able to leave the area until after Defendant Folsom Police Officer Bradshaw arrived on scene.

6) At least one Defendant officer (believed to be Sacramento County Sheriff Deputy John Doe #2) pulled his firearm out of the holster and pointed the gun at William Bernal in the presence of Celia Bernal.

7) While Celia Bernal was being forcibly and violently held in her vehicle, Sheriff Deputy Defendants John Doe #2 & #3 violently assaulted, beat, and handcuffed William Bernal in the presence of Celia Bernal and then they took him out of her sight and placed him in the rear seat of a squad car.

8) Defendant deputy believed to be John Doe #4 grabbed a lawn chair and stuck it behind Celia Bernal after she was pulled from her vehicle. All defendants on scene participated in creating an atmosphere of intimidation that Celia Bernal was not permitted to do anything other than sit in the plastic chair provided for her off of her own lawn.

9) Celia Bernal was detained in this manner for a period of perhaps up to 20 minutes until Defendant Bradshaw arrived.

10) Defendant Bradshaw used intimidation, fraud, deceit, and the show of force of all Defendants present on scene to "persuade" Celia Bernal into talking and providing the address of where she believed her son to be and to lead the caravan of defendant law enforcement officers to that location.

11) Defendant officers upon arriving just behind Celia Bernal at the address where she believed her son was located boxed her car in in such a manner that it would be impossible to leave. They then again used fraud, deceit, and intimidation to "persuade" Celia Bernal to go talk her son into coming out of the house where he was located so they could talk to him.

12) At no time during the events described did any officer, whether named as a Defendant or not, obtain or attempt to obtain a search warrant.

13) No officer at any time had any belief, reasonable or otherwise, that either Celia Bernal or William Bernal had committed a crime.

14) No officer at any time had any reasonable belief that force was necessary against either Celia Bernal or William Bernal to anywhere near the level of force that was actually used.

15) Neither Celia Bernal nor William Bernal attempted to flee or otherwise resist arrest.

16) The officers initiated the engagement using substantial force with persons whom they knew were not suspected of wrongdoing for the reason for the officer's appearance at that location. They were looking for a high school aged boy who was not present and were instead violently attacking two middle aged adults who posed no threat to anyone.

**CAUSE OF ACTION (A5) – CIVIL CODE 52.1**

Celia Bernal alleges that Defendants intentionally interfered with [or attempted to interfere with] her civil rights by threats, intimidation, or coercion. To establish this claim, Celia Bernal must prove all of the following:

1) That Defendant(s) made threats of violence against Celia Bernal causing Celia Bernal to reasonably believe that if she exercised her right to leave the presence of the officers, Defendant(s) would commit violence against her and that Defendant(s) had the apparent ability to carry out the threats;

or

1) That Defendant(s) acted violently against Celia Bernal to prevent her from exercising her right to leave the officers.
2) That Celia Bernal was harmed; and
3) That Defendant(s)' conduct was a substantial factor in causing Celia Bernal's harm.

CACI 3066

1) Defendants Deputy John Doe #1 and Deputy Hinkley engaged in acts of violence to prevent Celia Bernal from leaving.

2) Defendant Deputy John Doe #2 unholstered his firearm and pointed it at her husband and threatened to shoot him.

3) Defendants Deputy John Doe #1, Deputy Hinkley, Deputy John Doe #2, and other unknown John Does engaged in intimidation and coercion to prevent Celia Bernal from leaving the scene of the encounter.

4) All Defendants acted in concert using implied threats of violence to coerce and intimidate Celia Bernal into providing them the address where her son was located and escorting them to that location.

5) Celia Bernal suffered "Indian burn", strained arms and shoulders, and severe emotional distress that were caused by Defendants conduct.


**CAUSE OF ACTION (A6) – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Celia Bernal alleges that Defendants' conduct caused her to suffer severe emotional distress. To establish this claim, Celia Bernal must prove all of the following:
1) That Defendants' conduct was outrageous;
2) That Defendants acted with reckless disregard of the probability that Celia Bernal would suffer emotional distress, knowing that Celia Bernal was present when the conduct occurred;
3) That Celia Bernal suffered severe emotional distress; and
4) That Defendants' conduct was a substantial factor in causing Celia Bernal's severe emotional distress.

CACI 1600

1) Defendants engaged in a violent assault involving excessive force against a middle aged *disabled* man and a middle-aged woman wearing a business skirt and dress heels when they were looking for an 18-year-old kid.

2) Defendants pulled a firearm on Celia Bernal's husband in her presence and threatened to shoot him because he was incapable due to disability and recent surgery to bend in the manner they were forcing him to bend when they kicked his surgically repaired knees out from under him, kicked out his surgically repaired hips, wrenched his surgically repaired shoulders past the point of mobility, and were unsuccessful in wrenching his surgically repaired and still broken neck. Defendants continued this assault on William Bernal in the presence of Celia Bernal even after Celia Bernal screamed that her husband was disabled and begged them to stop assaulting him.

3) Defendants had no warrant nor exception to the warrant requirement for the detention of Celia Bernal, defacto arrest of Celia Bernal, search of Celia Bernal's vehicle, search of Celia Bernal's RV, search of Celia Bernal's property, use of force against Celia Bernal.

4) Celia Bernal suffered severe emotional distress that resulted in anxiety, loss of sleep, loss of consortium, and loss of trust in the law enforcement community. The anxiety and loss of sleep affected her so severely that it cut her earning potential by more than 50%.

**PART B – WILLIAM BERNAL AS PLAINTIFF**

**CAUSE OF ACTION (B1) – ASSAULT**

William Bernal alleges that Defendants assaulted him. To establish this claim, William Bernal must prove all of the following:
1. That Defendants acted, intending to cause harmful or offensive contact; AND
2. That William Bernal reasonably believed that he was about to be touched in a harmful or an offensive manner;
[or]
1. That Defendants threatened to touch William Bernal in a harmful or an offensive manner;

2. That it reasonably appeared to William Bernal that Defendant was about to carry out the threat;

3. That William Bernal did not consent to Defendant's conduct;

4. That William Bernal was harmed; and

5. That Defendant's conduct was a substantial factor in causing William Bernal's harm.

CACI 1301 - ASSAULT

11) William Bernal was exiting his home and was approaching his vehicle that his wife Celia Bernal had already gotten into.

12) William Bernal was approached by two Sacramento County Sheriff Deputies on either side of him.

13) One deputy (John Doe #2) grabbed William Bernal by the right shoulder and arm. Another Deputy (John Doe #3) grabbed William Bernal by the left shoulder and arm.

14) The two Deputies shoved William Bernal against the front of the car and kicked his knees out from under him and used their legs to forcibly spread his legs out.

15) Simultaneously, the two deputies also wrenched William Bernal's arms behind his back and slammed him face down onto the hood of the car, trying to forcibly turn his head so he would impact the hood with the side of his head.

16) William Bernal's neck was recently operated on and was still broken. It didn't turn far enough even though William Bernal did not willfully resist anything.

17) The two deputies grabbed William Bernal by the back of the head, tried to forcibly turn his head the other direction and again slammed it into the hood of the car.

18) Both "slams" resulted in William Bernal's face impacting the hood of the car more than the side of his head because of the immobility of his neck following the break and surgery.

19) The kicking of the knees and hips, all of which were also surgically repaired, resulted in tendon tears and damage to the surgical repairs.

20) The wrenching of William Bernal's shoulders and arms also took those surgically repaired joints past their post-surgical range of motion, resulting in tears and undoing of surgical repairs.

21) After the second "slam" onto the hood of the car, Deputies John Doe #2 and John Doe #3 handcuffed William Bernal's unnaturally contorted arms and then lifted him off the hood of the car by his arms, causing further wrenching of the surgical repairs. William Bernal screamed in pain and almost passed out from the excruciating pain. When he looked to his right, Deputy Defendant John Doe #2 had pulled his firearm out and had it pointed at William Bernal's forehead. William Bernal perceived that John Doe #2 was about to commit homicide and that William Bernal was about to die.

22) Both of these Deputies acted in coordination with each other and as part of a collective action by all Defendants named in this Cause of Action.

23) At no time prior to the acts of violence did Defendants speak to William Bernal or otherwise inform William Bernal that they were about to engage in such conduct or otherwise provide William Bernal with any opportunity (meaningful or not) to submit to a non-violent detention.

24) At no time did William Bernal consent to this conduct.

## CAUSE OF ACTION (B2) – BATTERY

William Bernal alleges that Defendants committed a battery. To establish this claim, William Bernal must prove all of the following:
1. That Defendants touched William Bernal or caused William Bernal to be touched with the intent to harm or offend him;
2. That William Bernal did not consent to the touching; and
3. That William Bernal was harmed or offended by Defendant's conduct; and
4. That a reasonable person in William Bernal's situation would have been offended by the touching.

CACI 1300 - BATTERY

13) William Bernal was exiting his home and was approaching his vehicle that his wife Celia Bernal had already gotten into.

14) William Bernal was approached by two Sacramento County Sheriff Deputies on either side of him.

15) One deputy (John Doe #2) grabbed William Bernal by the right shoulder and arm. Another Deputy (John Doe #3) grabbed William Bernal by the left shoulder and arm.

16) The two Deputies shoved William Bernal against the front of the car and kicked his knees out from under him and used their legs to forcibly spread his legs out.

17) Simultaneously, the two deputies also wrenched William Bernal's arms behind his back and slammed him face down onto the hood of the car, trying to forcibly turn his head so he would impact the hood with the side of his head.

18) William Bernal's neck was recently operated on and was still broken. It didn't turn far enough even though William Bernal did not willfully resist anything.

19) The two deputies grabbed William Bernal by the back of the head, tried to forcibly turn his head the other direction and again slammed it into the hood of the car.

20) Both "slams" resulted in William Bernal's face impacting the hood of the car more than the side of his head because of the immobility of his neck following the break and surgery.

21) The kicking of the knees and hips, all of which were also surgically repaired, resulted in tendon tears and damage to the surgical repairs.

22) The wrenching of William Bernal's shoulders and arms also took those surgically repaired joints past their post-surgical range of motion, resulting in tears and undoing of surgical repairs.

23) Both of these Deputies acted in coordination with each other and as part of a collective action by all Defendants named in this Cause of Action.

24) At no time prior to the acts of violence did Defendants speak to William Bernal or otherwise inform William Bernal that they were about to engage in such conduct or otherwise provide William Bernal with any opportunity (meaningful or not) to submit to a non-violent detention.

25) At no time did William Bernal consent to this conduct.

26) Any reasonable person would be offended by suddenly and without provocation being grabbed, twisted, pulled, slammed into the hood of a car, and having knees kicked out and hips kicked open.

27) Any reasonable person should know that another reasonable person would be harmed or offended by suddenly and without provocation being grabbed, twisted, pulled, slammed into the hood of a car, and having knees kicked out and hips kicked open.in the manner that these Deputy defendants acted toward William Bernal.

**CAUSE OF ACTION (B3) – FALSE IMPRISONMENT**

William Bernal alleges that he was wrongfully restrained/confined/detained by Defendant(s). To establish this claim, William Bernal must prove all of the following:
1. That Defendant(s) intentionally deprived William Bernal of him freedom of movement by use of physical barriers/force/threats of force/menace/fraud/deceit/unreasonable duress;
[and]
2. That the restraint/confinement/detention compelled William Bernal to stay or go somewhere for some appreciable time, however short;
3. That William Bernal did not voluntarily consent or consent at all;
4. That William Bernal was actually harmed; and
5. That Defendant's conduct was a substantial factor in causing William Bernal's harm. CACI 1400

William Bernal alleges that he was wrongfully arrested by Defendants. To establish this claim, William Bernal must prove all of the following:
1. That Defendants arrested William Bernal without a warrant;

2. That William Bernal was harmed; and

3. That Defendants' conduct was a substantial factor in causing William Bernal's harm. CACI 1401

11) William Bernal was exiting his home and was approaching his vehicle that his wife Celia Bernal had already gotten into.

12) William Bernal was approached by two Sacramento County Sheriff Deputies on either side of him.

13) One deputy (John Doe #2) grabbed William Bernal by the right shoulder and arm. Another Deputy (John Doe #3) grabbed William Bernal by the left shoulder and arm.

14) The two Deputies shoved William Bernal against the front of the car and kicked his knees out from under him and used their legs to forcibly spread his legs out.

15) Simultaneously, the two deputies also wrenched William Bernal's arms behind his back and slammed him face down onto the hood of the car, trying to forcibly turn his head so he would impact the hood with the side of his head.

16) William Bernal's neck was recently operated on and was still broken. It didn't turn far enough even though William Bernal did not willfully resist anything.

17) The two deputies grabbed William Bernal by the back of the head, tried to forcibly turn his head the other direction and again slammed it into the hood of the car.

18) Both "slams" resulted in William Bernal's face impacting the hood of the car more than the side of his head because of the immobility of his neck following the break and surgery.

19) The kicking of the knees and hips, all of which were also surgically repaired, resulted in tendon tears and damage to the surgical repairs.

20) The wrenching of William Bernal's shoulders and arms also took those surgically repaired joints past their post-surgical range of motion, resulting in tears and undoing of surgical repairs.

21) After the second "slam" onto the hood of the car, Deputies John Doe #2 and John Doe #3 handcuffed William Bernal's unnaturally contorted arms and then lifted him off the hood of the car by his arms, causing further wrenching of the surgical repairs. William Bernal screamed in pain and almost passed out from the excruciating pain. When he looked to his right, Deputy Defendant John Doe #2 had pulled his firearm out and had it pointed at William Bernal's forehead. William Bernal perceived that John Doe #2 was about to commit homicide and that William Bernal was about to die.

22) Both of these Deputies acted in coordination with each other and as part of a collective action by all Defendants named in this Cause of Action.

23) Defendant Deputies John Doe #2 and John Doe #3 frog marched William Bernal to the street where they threw him into the back seat of a squad car. William Bernal was left in the squad car until the arrival of Defendant Folsom Police Officer Bradshaw.

24) After the arrival of Folsom Police Officer Bradshaw, the Sheriff Deputies released William Bernal from the vehicle and uncuffed him. They did continue to hover over and near William Bernal however until Defendant Bradshaw was done communicating with William Bernal's wife Celia Bernal.

25) Defendant Bradshaw then questioned Celia Bernal and used deceit to get Celia Bernal to provide information that any reasonable person would know would cause William and Celia Bernal to go to a particular location desired by Defendant Bradshaw. After this, there was an implicit understanding that William and Celia Bernal were, as a

COMPLAINT FOR DAMAGES

result of deceit, duress, fraud, force, menace, and threat of force, going to lead the

various law enforcement personnel to the person who they wished to speak to: his son

Ryan Bernal.

26) William Bernal was free to leave only after leading the Defendants present to the

address where his son Ryan Bernal was located, and through deceit, fraud and duress

had been "encouraged" to talk Ryan into coming out of a house of safety to talk to

these Defendants. Even then, William and Celia Bernal were not truly free to leave as

their vehicle had been blocked in on all sides by Defendant Law Enforcement

Officers on arrival at that destination.

**CAUSE OF ACTION (B4) – 42 U.S.C 1983**

In order to prevail on him § 1983 claim against Defendants, the plaintiff must prove each
of the following elements by a preponderance of the evidence:
    1. the defendant acted under color of state law; and
    2. the act[s] of Defendant deprived the plaintiff of him particular rights under [the
    United States Constitution]...
9th Circuit Model Civil Jury Instruction 9.3

Under the Fourth Amendment, a person has the right to be free from an unreasonable
search of him [person] [residence] [vehicle] [other object of search].  In order to prove
the defendants deprived the plaintiff of this Fourth Amendment right, the plaintiff must
prove the following additional elements by a preponderance of the evidence:
    1. Defendants searched the plaintiff's [person] [residence] [vehicle];
    2. in conducting the search, Defendants acted intentionally; and
    3. the search was unreasonable.
9.12, unreasonable search

Under the Fourth Amendment, a person has the right to be free from an unreasonable
seizure of his person.  In order to prove the defendants deprived the plaintiff of this
Fourth Amendment right, the plaintiff must prove the following additional elements by a
preponderance of the evidence:
    1. Defendants seized the plaintiff's person;
    2. in seizing the plaintiff's person, Defendants acted intentionally;
    and
    3. the seizure was unreasonable.
A defendant "seizes" the plaintiff's person when he restrains the plaintiff's liberty
through coercion, physical force or a show of authority.  A person's liberty is restrained
when, under all of the circumstances, a reasonable person would not have felt free to
ignore the presence of law enforcement officers and to go about his business.

In determining whether a reasonable person in the plaintiff's position would have felt free to leave, consider all of the circumstances, including:

(1) the number of officers present;

(2) whether weapons were displayed;

(3) whether the encounter occurred in a public or nonpublic setting;

(4) whether the officer's manner would imply that compliance would be compelled; and

(5) whether the officers advised the plaintiff that he was free to leave.

9.20, unreasonable seizure of person

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

(1) the nature of the crime or other circumstances known to the officers at the time force was applied;

(2) whether the plaintiff posed an immediate threat to the safety of the officers or to others;

(3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight;

(4) the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the type and amount of force used;

[(6) the availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff;]]

[(7) the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;]

[(8) whether it was practical for the officer[s] to give warning of the imminent use of force, and whether such warning was given;]

[(9) whether the officer[s] [was] [were] responding to a domestic violence disturbance;]

[(10) whether it should have been apparent to the officer[s] that the person [he] [he] [they] used force against was emotionally disturbed;]

[(11) whether a reasonable officer would have or should have accurately perceived a mistaken fact;]

[(12) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm; and]

"Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

9.25, unreasonable force in seizure of person

17) All Defendant officers on scene engaged in trespass to Plaintiff's property and participated or ratified the encroachment onto the property, the assault on William Bernal's person, and the prolonged detention in the back seat of the squad car.

18) All Defendant officers on scene engaged in a search of Plaintiff's RV camper that was parked in the driveway

19) All Defendant officers on scene trespassed across at a minimum Plaintiff's front yard, searching from vantage points where they had no right to be.

20) All Defendant Officers on scene engaged in a joint effort to prevent William Bernal from being able to leave the area until after Defendant Folsom Police Officer Bradshaw arrived on scene.

21) At least one Defendant officer (believed to be Sacramento County Sheriff Deputy John Doe #2) pulled his firearm out of the holster and pointed the gun at William Bernal.

22) While William Bernal was being forcibly and violently taken down onto the hood of the car that his wife was in, he watched Sheriff Deputy Defendant John Doe #1 and Defendant Hinkley assault his wife.

23) William Bernal was thrown into the rear of a squad car and left there for a period of perhaps up to 20 minutes until Defendant Bradshaw arrived.

24) Defendant Bradshaw used intimidation, fraud, deceit, and the show of force of all Defendants present on scene to "persuade" Celia Bernal into talking and providing the address of where she believed her son to be and to lead the caravan of defendant law enforcement officers to that location (by that point with William riding with her).

25) Defendant officers upon arriving just behind William Bernal at the address where he believed him son was located boxed him car in in such a manner that it would be impossible to leave. They then again used fraud, deceit, and intimidation to "persuade" Celia Bernal to go talk her son into coming out of the house where he was located so they could talk to him.

26) At no time during the events described did any officer, whether named as a Defendant or not, obtain or attempt to obtain a search warrant.

27) No officer at any time had any belief, reasonable or otherwise, that either William Bernal or Celia Bernal had committed a crime.

28) No officer at any time had any reasonable belief that force was necessary against either William Bernal or Celia Bernal to anywhere near the level of force that was actually used.

29) Neither William Bernal nor Celia Bernal attempted to flee or otherwise resist arrest.

30) The officers initiated the engagement using substantial force with persons whom they knew were not suspected of wrongdoing for the reason for the officer's appearance at that location. They were looking for a high school aged boy who was not present and were instead violently attacking two middle aged adults who posed no threat to anyone.

**CAUSE OF ACTION (B5) – CIVIL CODE 52.1**

William Bernal alleges that Defendants intentionally interfered with [or attempted to interfere with] him civil rights by threats, intimidation, or coercion. To establish this claim, William Bernal must prove all of the following:

    2) That Defendant(s) made threats of violence against William Bernal causing William Bernal to reasonably believe that if he exercised him right to leave the presence of the officers, Defendant(s) would commit violence against him and that Defendant(s) had the apparent ability to carry out the threats;

or

    4)  That Defendant(s) acted violently against William Bernal to prevent him from exercising him right to leave the officers.

    5)  That William Bernal was harmed; and

    6)  That Defendant(s)' conduct was a substantial factor in causing William Bernal's harm.

CACI 3066

6)  Defendants Deputy John Doe #2 and Deputy John Doe #3 engaged in acts of violence to prevent William Bernal from leaving.

7)  Defendant Deputy John Doe #2 unholstered his firearm and pointed it at him and threatened to shoot him.

8)  Defendants Deputy John Doe #1, Deputy Hinkley, Deputy John Doe #2, and other unknown John Does engaged in intimidation and coercion to prevent Celia Bernal from leaving the scene of the encounter.

9)  All Defendants acted in concert using implied threats of violence to coerce and intimidate Celia Bernal into providing them the address where him son was located and escorting them to that location.

10) William Bernal suffered damage to his surgically repaired knees, surgically repaired hips, surgically repaired shoulders and surgically repaired neck that were caused by Defendants conduct.

## CAUSE OF ACTION (B6) – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

William Bernal alleges that Defendants' conduct caused him to suffer severe emotional distress. To establish this claim, William Bernal must prove all of the following:

    5)  That Defendants' conduct was outrageous;

    6)  That Defendants acted with reckless disregard of the probability that William Bernal would suffer emotional distress, knowing that William Bernal was present when the conduct occurred;

    7)  That William Bernal suffered severe emotional distress; and

    8)  That Defendants' conduct was a substantial factor in causing William Bernal's severe emotional distress.

CACI 1600

5) Defendants engaged in a violent assault involving excessive force against a middle aged man and woman when they were looking for an 18-year-old kid.

6) Defendants pulled a firearm on William Bernal's and threatened to shoot him because he was incapable due to disability and recent surgery to bend in the manner they were forcing him to bend when they kicked his surgically repaired knees out from under him, kicked out his surgically repaired hips, wrenched his surgically repaired shoulders past the point of mobility, and were unsuccessful in wrenching his surgically repaired and still broken neck. Defendants continued this assault on William Bernal even after Celia Bernal screamed that him husband was disabled and begged them to stop assaulting him.

7) Defendant Deputy Hinkley and Deputy John Doe #1 assaulted Celia Bernal in the presence of William Bernal, twisting her arms and pulling them in a tug of war game as if her arms were a wishbone. William Bernal hollered out for them to stop to no avail.

8) Defendants had no warrant nor exception to the warrant requirement for the detention of William Bernal, defacto arrest of William Bernal, search of William Bernal's vehicle, search of William Bernal's RV, search of William Bernal's property, use of force against William Bernal.

9) William Bernal suffered severe emotional distress that resulted in anxiety, loss of sleep, loss of consortium, and loss of trust in the law enforcement community.

CONCLUSION AND PRAYER FOR RELIEF

PLAINTIFFS seek monetary damages and judgment as follows:

1) Special Damages which they currently estimate to have a combined total value of $1,500,000.00.

2) General Damages in amount of $250,000.00 for each Plaintiff.

COMPLAINT FOR DAMAGES

3) Punitive Damages in an amount to be determined as discovery shows appropriate. In the absence of discovery, Plaintiffs request punitive damages of $100,000.00 from each and every defendant.

4) Attorney Fees and Costs of Suit.

5) Any other relief which the court may deem just and lawful.

PLAINTIFFS DEMAND TRIAL BY JURY

Dated:

BECKER LAW PRACTICE

  /s/ Matthew Becker
Matthew Becker
Attorney for Plaintiffs
William Bernal and Celia Bernal

COMPLAINT FOR DAMAGES