1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10

11    WILLIAM BERNAL, et al.,                          No. 2:19-cv-00482-MCE-AC

12                       Plaintiffs,

13         v.                                          **MEMORANDUM AND ORDER**

14    SACRAMENTO COUNTY SHERIFF
      DEPARTMENT, et al.,
15
                           Defendants.
16

17

18         Plaintiffs William and Celia Bernal (collectively, "Plaintiffs") sought to recover from

19    multiple entities and individuals for constitutional injuries purportedly sustained during

20    the investigation of allegations that their son, Ryan Bernal, had made threats to engage

21    in a shooting at a local high school.[1]  On April 5, 2022, this Court issued a Memorandum

22    and Order granting a Motion for Summary Judgment filed by Defendants County of

23    Sacramento, Sacramento County Sheriff Scott Jones, and Sacramento County Sheriff's

24    Deputies Couch, Winkel, Kennedy, Sutter, Chhlang, Bliss, and Quakenbush (collectively,

25    "Defendants"), and judgment was thereafter entered in their favor.  ECF Nos. 32, 38.[2]

26    _____

27         [1] The Court will hereafter refer to the Bernals by their first names rather than their surnames for
      purposes of clarity.

28         [2] Plaintiffs named various additional entities and individuals as defendants as well.  The Court
      dismissed those remaining parties under Federal Rule of Civil Procedure ("Rule") 41(b) for failure to follow

1  Presently before the Court are an Amended Bill of Costs ("Bill of Costs") (ECF No. 42)

2  and a Motion for Attorneys' Fees ("Motion") (ECF No. 40) filed by Defendants.  Plaintiffs

3  have not opposed Defendants' Bill of Costs but they filed an opposition to the Motion.

4  Given that, and the fact that the Court finds those costs appropriate under the applicable

5  rules, costs are hereby taxed against Plaintiffs in the amount of $10,128.60.  In addition,

6  for the following reasons, Defendants' Motion is GRANTED.[3]

7

8  **ANALYSIS**[4]

9

10  **A.     Whether Defendants are entitled to recover fees**

11  Defendants seek to recover $164,362.50 in attorneys' fees incurred in the

12  defense of this case as prevailing parties under 42 U.S.C. § 1983.  According to

13  Defendants, a fee award is appropriate under 42 U.S.C. § 1988 because this action was

14  "unreasonable, frivolous, meritless, or vexatious."  Defs.' Opp., ECF No. 40-1 at 5

15  (quoting Patton v. Cnty. of Kings, 857 F.2d 1379, 1381 (9th Cir. 1988)).  The Court

16  agrees.

17  Defendants have shown they are entitled to a fee recovery because Plaintiffs' suit

18  was meritless from the outset.  "[T]he term 'meritless' is to be understood as meaning

19  groundless or without foundation, rather than simply that the plaintiff has ultimately lost

20  his case, and . . . the term 'vexatious' in no way implies that the plaintiff's subjective bad

21  faith is a necessary prerequisite to a fee award against him."  Christiansburg Garment

22  Co. v. Equal Emp. Opportunity Comm'n, 434 U.S. 412, 422 (1978).  "[A] district court

23  may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding

24  _____

25  the applicable rules and orders of this Court.  ECF No. 37.

26  [3] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  See E.D. Cal. Local R. 230(g).

27  [4] The parties are familiar with the facts, which were discussed in greater detail in the Court's

28  Memorandum and Order granting Defendants' Motion for Summary Judgment.  ECF No. 32.

2

1  that the plaintiff's action was frivolous, unreasonable, or without foundation, even though

2  not brought in subjective bad faith."  Id.

3  In their Complaint, Plaintiffs alleged that "[t]he offending law enforcement

4  agencies had heard rumor and innuendo that someone had reported that someone else

5  had heard that someone else had been discussing the contents of text messages

6  allegedly written by [Ryan] that the eaves-dropper had interpreted to be threatening."

7  ECF No. 1 at 1-2.  Throughout the Complaint, Plaintiffs alleged that only rumor and

8  innuendo supported the idea that Ryan might have threatened to shoot people at his

9  school on the date in question.  See id. ¶¶ 3-5.  At base, Plaintiffs crafted the Complaint

10  entirely to perpetuate the myth that the idea that Ryan would threaten to shoot up the

11  school was preposterous.  The allegations in the subsequent First Amended Complaint

12  ("FAC") are largely the same.  See ECF No. 11.

13  At the time Plaintiffs made these allegations, however, they knew (and they later

14  admitted) that at the time the events took place in this case, Defendants had "received

15  credible information from the school that Ryan had threatened to go to Vista Del Lago

16  High School to 'shoot up the school, and [March 5, 2018] was the day.'"  Pl.'s Response

17  to Defs.' Statement of Undisputed Facts, ECF No. 30-1, No. 1.  Credible information is at

18  the opposite end of the spectrum from rumor and innuendo.  An honest recitation of the

19  facts in the beginning might have rendered this action capable of disposition under Rule

20  12(b)(6).[5]  Instead, Plaintiffs misled this Court, and defense counsel, by setting forth a

21  fictional set of facts disconnected from reality.

22  _____

23  [5] To be sure, Plaintiffs make much of the fact that Defendants did not file a motion to dismiss for failure to state a claim.  Given how much Plaintiffs obfuscated the facts and took liberties with the truth in the Complaint and FAC, however, Defendants could not in good faith have done so.  When presented with

24  a motion under Rule 12(b)(6), this Court is required to take the facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party.  Under the version of the facts as pled,

25  and under the applicable legal standard, the Court would have had to construe the Complaint and FAC as alleging that officers had no justification whatsoever for initiating an encounter with Plaintiffs because the

26  "investigation" at that point was based on rumor inside of innuendo all wrapped up in hearsay.  The pleadings also alleged officers attacked Plaintiffs violently and without any justification.  That is not what

27  happened.  If Plaintiff had pled the facts as they ended up coming out, the case could have been dismissed earlier.  They did not, even though Plaintiffs were there and they knew what had actually

28  happened.

Even worse, Plaintiffs still continue to harp on their irrelevant theory that Ryan did not fit the profile of a school shooter.  They made this argument in opposition to Defendants' Motion for Summary Judgment, and they still try to find a way to validate that notion here.  It is undisputed, however, that officers were acting on credible information that Ryan actually did make threats.  It is also undisputed that Ryan later pled guilty to a misdemeanor violation of California Penal Code § 422, which provides, in pertinent part:

> Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

Cal. Pen. Code § 422(a).  Those undisputed facts are the ones that matter, and they have been known to Plaintiffs since prior to the inception of this case.  Trying to deflect from those facts by constructing some hypothetical shooter profile that is completely irrelevant to the facts of this case was a waste of everyone's time.

Plaintiffs similarly alleged in their pleadings that Celia advised callers "from an unidentified number purporting to be from the local police department" that "Ryan was at his grandmother's house."  Compl., ECF No. 1 ¶¶ 4-5.[6]  She had first-hand knowledge of what occurred during those calls, and strategically left out both that Officer Chhlang identified himself over the phone and that she advised Officer Chhlang that she knew where Ryan was located but would not tell him.  Officers thus believed at that point that Celia at least was a material witness who could be located at her home for further

---

[6] Plaintiffs also averred that Celia advised callers that the "rumors were false."  Id. ¶ 5.  She may have done so at the time, so this may be factually accurate.  The way this fact is pled, however, adds to the misleading nature of the Complaint and supports Plaintiffs' false narrative that officers overreacted in reliance on baseless information.

4

1    questioning.

2         Plaintiffs also left out of their pleadings the facts that William:  (1) is 6'3" tall and

3    weighed 290 pounds on the date of the incident in question, much bigger than the

4    responding officers, and bigger than Officer Chhlang in particular; (2) came out of the

5    house belligerently yelling and screaming at officers; (3) struck Officer Chhlang in the

6    chest; and (4) later apologized to officers for his conduct.[7]  The way the facts were pled,

7    however, led the reader to believe instead that law enforcement had violently

8    overreacted to docile and calm Plaintiffs in reliance on flimsy to non-existent information.

9    That was simply untrue, and Plaintiffs knew it when they initiated this action.

10        Even when the true facts came to light (i.e., that Defendants had more than

11   sufficient grounds to detain Plaintiffs for the brief period that they did and used minimal

12   force to overcome Plaintiffs' resistance to that detention) after discovery and when they

13   were set forth for the Court in support of Defendants' Motion for Summary Judgment,

14   Plaintiffs still refused to credibly confront the evidence in this case.  Apparently realizing

15   they could no longer continue with the story they had set forth in their pleadings,

16   Plaintiffs changed gears to argue instead that the entire encounter was based on Celia's

17   initial consent to answering an officer's question and that when she no longer consented,

18   the interaction should have terminated.  Plaintiffs pointed to no authority for the

19   proposition that officers investigating credible school shooting threats are required to

20   walk away when a material witness declines to cooperate.  This Court specifically

21   addressed this theory in its Memorandum and Order granting Defendants' Motion for

22   Summary Judgment:

23   _____

24        [7] Plaintiffs also tried to contest whether William reached into the bag he was carrying, but the
     Court determined that fact was immaterial given William's proximity to it.  The Court notes, however, that
25   in the video of William being detained in the back of an officer's car, he did not correct officers when
     officers admonished him for resisting and specifically for reaching into his bag.  The only evidence
26   Plaintiffs submitted to contradict this fact was a declaration from Celia stating that she did not see William
     reach into the bag, the deposition testimony of an officer that was working to detain Celia and was not
27   focused on William who also stated he did not see William reach into the bag, and the deposition
     testimony of a neighbor who said he did not notice a bag at all.  Conspicuously absent was any declaration
28   from William.  While the Court did not need to resolve the question of whether William actually reached
     into the bag, it is clear that Plaintiffs were trying to manufacture a factual dispute where there is none.

1
2
3
4
5
6
7
8

> In fact, the Court is at a loss to conceive what Plaintiffs would have had the officers do instead.  When Celia advised officers that her son was not home, should officers have immediately given up on questioning her despite the fact that she had already admitted she knew where Ryan was?  Should they have abandoned their questioning despite the fact that it is undisputed they were acting on credible information that a threat had been made and at least Celia had material information?  Should officers have walked away knowing they were potentially leaving hundreds if not thousands of students to innocuously start their school day at risk of being killed by someone that could have been stopped?  These options are absurd, and just posing these questions makes clear the answer:  the detention of the non-cooperative Plaintiffs was Defendants' only reasonable alternative under the circumstances.

9

ECF No. 32 at 8-9.

10
11
12
13
14
15
16
17
18
19

Finally, the Court notes that Plaintiffs also tried in opposition to Defendants' summary judgment motion to lodge a frivolous argument against applying qualified immunity.  That immunity doctrine is apparently a "pet peeve" of Plaintiffs' counsel that he believes has no basis in the law.  Counsel presented his theory as if it was actually viable, ignoring the fact that he was asking this Court to ignore scads of settled and binding precedent.  Even now counsel obtusely "invites" the Court to enlighten him as to how he should have raised such an argument.  The answer is:  probably any other way than he did, which was to set forth his argument as if it had any legal basis rather than just as an attempt to preserve an issue in the off chance this case should make it to the Supreme Court.

20
21
22
23
24
25
26

In sum, Plaintiffs' Complaint and FAC set forth a delusional version of the facts, showing some level of denial on their part about Ryan's and, by association their, involvement in making school shooting threats in the aftermath of one of the worst shootings to have rocked this nation, where seventeen people were murdered and seventeen more injured at Marjorie Stoneman Douglas High School in Parkland, Florida.[8]  The Court could be sympathetic to scared parents worried for their child as

27
28

[8]  The above examples of Plaintiffs' lack of affinity for the facts and the law are not exhaustive.  By way of further example, Plaintiffs challenged the "search" of their vehicle, RV, and yard in their pleadings but abandoned those theories in opposition to Defendants' Motion for Summary Judgment, instead choosing to argue that their house was unconstitutionally searched, an allegation not included in the

events tensely and rapidly evolved in the moment.  But cooler heads should have prevailed before this action was filed, and Defendants should not have to bear the cost of Plaintiffs' refusal to face reality.  Accordingly, the Court specifically finds that this action was "unreasonable, frivolous, meritless, or vexatious," and Defendants are entitled to fees.

### B.    Whether Plaintiffs' Counsel shall also be liable for fees

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Plaintiffs did not oppose taxing counsel with fees, and the Court concludes such a sanction is appropriate.

The Court has already articulated why this action was baseless from the start.  Counsel made things worse by doubling down on that frivolity.  He knew from the beginning that Ryan had pled guilty to making threats.  He thus should have known that officers had a justification to locate Plaintiffs and question them.  He also should have known that the search claims set forth in the pleadings were without merit.  Counsel clearly realized as much by the time he drafted the opposition to Defendants' summary judgment motion because he abandoned those arguments and focused on the purported search of the house, which was not pled in the complaints.  Counsel also continued to make meritless and/or irrelevant arguments as to Ryan's individual profile, Plaintiffs' consent or lack thereof, and whether he believes qualified immunity should be available as a defense.  Even in opposition to the current Motion, counsel goes on a tangent about how he believes officers' duties should be construed, at one point arguing that "[w]alking away from an officer is not and cannot ever be a violation of Penal Code §§ 148 or 69." ECF No. 43 at 7.  Counsel apparently believes that California peace officers have no

---

Complaint or the FAC.  The Court might have been able to overlook one inconsistency, but in this case misrepresentations and shifting legal theories piled on top of each other such that the Court can only conclude that Plaintiffs are willfully choosing to ignore the truth.

1   duty to investigate or make arrests so interference with an investigation or an arrest

2   cannot ever constitute a violation of those sections.  That position is nonsensical and

3   would undermine those code sections in their entirety.  This shows, however, the extent

4   to which counsel is willing to make legally absurd arguments based on what he thinks

5   the law should be rather than what it is.

6          Counsel also still insists in the current Opposition that "William Bernal was

7   standing still between the front of the vehicle and the garage" when events unfolded.  Id.

8   at 8.  The undisputed facts, however, indicate that William was belligerent and yelling,

9   which led officers to utilize additional force to control him.  Counsel continues to

10  demonstrate a complete unwillingness to accept the facts as they are rather than as he

11  would have liked them to be.  There is a line between creatively advocating for clients

12  and misleadingly setting forth facts and arguments detached from the law.  Counsel

13  crossed that line here.  The Court thus concludes that entering the fee award against

14  Plaintiffs' counsel as well is warranted.

15         **C.     Whether the fees sought are reasonable**

16         Plaintiffs' only arguments in opposition to the amount of fees sought are that the

17  case could have been resolved earlier if Defendants had filed a motion to dismiss and

18  that only a portion of the fees should be awarded if part of this action was not frivolous.[9]

19  The Court has already explained why such a motion to dismiss would have been

20  unsuccessful and a waste of resources.  It has also explained why the complaints were

21  meritless in their entirety.  Accordingly, the Court finds these arguments unpersuasive

22  and will proceed to consider the reasonableness of the fees sought.

23         "A reasonable fee is that which is 'sufficient to induce a capable attorney to

24  undertake the representation of a meritorious civil rights case.'"  K.M. ex rel. Bright v.

25  Tustin Unified Sch. Dist., 78 F. Supp. 3d 1289, 1297 (C.D. Cal. 2015) (quoting Perdue v.

26  _____

27         [9] Technically, Plaintiffs' counsel argues that the case could have been resolved at the "demurrer
    stage."  ECF No. 43 at 15.  This is federal court and there are no demurrers, so this Court addresses
28  counsel's argument as if referring to a Rule 12(b)(6) motion.

1    Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010)).  The Court calculates the amount of

2    attorney's fees by calculating a "lodestar" and "multiplying the number of hours

3    reasonably spent on the litigation by a reasonable hourly rate."  McCown v. City of

4    Fontana Fire Dep't, 565 F.3d 1097, 1102 (9th Cir. 2009).

5          Defendants argue that billable rates of between $200 and $225 are reasonable.

6    The Court agrees.  In fact, these rates are more than reasonable in this district, as are

7    the rates billed for paralegals at approximately $100 per hour.  See, e.g., Siafarikas v.

8    Mercedes-Benz USA, LLC, No. 2:20-cv-01784-JAM-AC, 2022 WL 16926265, at *3 (E.D.

9    Cal. Nov. 14, 2022); DCL Tech., Inc. v. Ford Motor Co., No. 1:21-cv-00828-AWI-BAM,

10   2022 WL 2441572, at *3 (E.D. Cal. July 5, 2022).

11         The Court has also reviewed the billing records submitted by Defendants and

12   considers the hours billed reasonable as well.  Plaintiffs brought numerous claims

13   against multiple Defendants and couched their pleadings in such a way that this case

14   could not be resolved prior to summary judgment.  Given the reasonableness of the

15   hours expended and the hourly rate requested, as well as Plaintiffs' lack of opposition to

16   the rates or any of the line items, the Court determines that imposition of the requested

17   $164,362.50 in its entirety is reasonable.

18

19                                **CONCLUSION**

20

21         Not every encounter with law enforcement will give rise to constitutional claims,

22   and not everyone detained by law enforcement is a victim.  Plaintiffs are not victims

23   here.  To the contrary, this is a case in which law enforcement was clearly damned if

24   they did and damned if they did not.  We will never know if Ryan intended to go through

25   with his threats, and if officers' detention of Plaintiffs stopped that from happening.  But

26   regardless, whether Plaintiffs think Ryan would have followed through is irrelevant.

27   Once officers had credible information that threats had been made, they had to assume

28   Ryan meant what he said and that thousands of lives were at stake.  To that end,

1   Plaintiffs were not detained because officers overreacted; they were detained because

2   their son committed a heinous crime, regardless of how much they attempt to minimize it

3   now.  If officers had not detained Plaintiffs, and Ryan had proceeded to try to shoot up

4   his high school, that would have been laid on officers' backs as well.  Instead, officers

5   did their jobs and nonetheless still had to defend themselves here against Plaintiffs

6   unwilling to take responsibility for their own conduct.  Bringing such a meritless action

7   has consequences, however, which in this case is to pay the fees of the defending

8   parties.  Accordingly, for the reasons just stated, costs are TAXED against Plaintiffs in

9   the amount of $10,128.60.  Defendants' Motion for Attorney Fees (ECF No. 40) is

10  GRANTED, and Defendants are awarded fees in the amount of $164,362.50, to be paid

11  by both Plaintiffs and their counsel.  This case remains closed.

12          IT IS SO ORDERED.

13  Dated:  March 14, 2023

15  MORRISON C. ENGLAND, JR.
    SENIOR UNITED STATES DISTRICT JUDGE