UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BERNAL, | No. 2:19-cv-00482-DC-AC |
| Plaintiff, | |
| v. | ORDER ON MOTIONS *IN LIMINE* |
| SACRAMENTO COUNTY SHERIFF DEPARTMENT, et al., | (Doc. Nos. 100, 102) |
| Defendants. | |

This matter is set for trial on April 13, 2026. On July 14, 2025, Defendants Chhlang and Bliss filed six motions *in limine*. (Doc. Nos. 99–104.) The following day, Plaintiff William Bernal filed one motion *in limine*. (Doc. No. 111.) The parties filed oppositions to the motions, and Defendants filed replies in support of their motions. (Doc. Nos. 112–18, 121–126.)

On October 10, 2025, the court held a hearing on the parties' motions *in limine*. (Doc. No. 128.) At that hearing, the court ruled on five of the parties' motions *in limine*. (*Id*.) The court ordered the parties to provide supplemental briefing on Defendants' motion *in limine* No. 4 to address whether Plaintiff's state law claim for false imprisonment was still at issue in the case. (*Id*.) On October 24 and 25, 2025, the parties timely filed supplemental briefing as ordered by the court (Doc. Nos. 129–30), and the court took under submission Defendants' motions *in limine* Nos. 2 and 4.

1

Defendants' motion *in limine* No. 2 seeks to exclude and/or limit testimony from Plaintiff's treating physicians/providers related to causation of Plaintiff's injuries. (Doc. No. 100.) Defendants' motion *in limine* No. 4 seeks to exclude testimony from Plaintiff and/or others related to the legality of the detention. (Doc. No. 102.)  For the reasons explained below, the court will grant in part and deny in part Defendants' motion *in limine* No. 2 and grant Defendants' motion *in limine* No. 4.

## LEGAL STANDARD

"A motion *in limine* is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citing Black's Law Dictionary 803, 1038–39 (8th ed. 2004)). Like other pretrial motions, motions *in limine* "are useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (quoting *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986)). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citations omitted).

"In many instances, rulings 'should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.'" *Vargas v. Lopez*, No. 23-cv-02490-TSH, 2025 WL 2800196, at *1 (N.D. Cal. Sep. 30, 2025) (quoting *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016)); *see Williams v. Castro*, No. 20-cv-01617-SAB, 2023 WL 2432770, at *1 (E.D. Cal. Mar. 9, 2023) (noting that "some evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion *in limine* and it is necessary to defer ruling until during trial when the trial judge can better estimate the impact of the evidence on the jury.") (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

Moreover, *in limine* rulings are not binding on the court, and the "district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *City of Pomona*, 866 F.3d at 1070 (quoting

*United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999)).

**A.     Defendants' Motion *in Limine* No. 2**

1.   Relevant Procedural Background

Plaintiff William Bernal filed the initial complaint initiating this civil rights action on March 15, 2019.[1] (Doc. No. 1.) A few days later, the court issued a scheduling order, which provided the following regarding the disclosure of expert witnesses:

> All counsel are to designate in writing, and serve upon all other parties the name, address, and area of expertise of each expert that they propose to tender at trial not later than sixty (60) days after the close of discovery. The designation shall be accompanied by a written report prepared and signed by the witness. The report shall comply with Federal Rule of Civil Procedure 26(a)(2)(B).
>
> Within thirty (30) days after the designation of expert witnesses, any party may designate a supplemental list of expert witnesses who will express an opinion on a subject covered by an expert designated by an adverse party. The right to designate a supplemental expert for rebuttal purposes only shall apply to a party who has not previously disclosed an expert witness on the date set for expert witness disclosure by this Order.
>
> Failure of a party to comply with the disclosure schedule as set forth above in all likelihood will preclude that party from calling the expert witness at the time of trial. An expert witness not appearing on the designation will not be permitted to testify unless the party offering the witness demonstrates: (a) good cause for the party's failure to designate the expert witness in accordance with this Order; (b) that the Court and opposing counsel were promptly notified upon discovery of the witness; and (c) that the witness was promptly made available for deposition.
>
> For purposes of this Order, an "expert" is any person who may be used at trial to present evidence under Federal Rules of Evidence 702, 703, and 705, which include both "percipient experts" (persons who, because of their expertise, have rendered expert opinions in the normal course of their work duties or observations pertinent to the issues in the case) and "retained experts" (persons specifically designated by a party to be a testifying expert for the purposes of litigation).
>
> Each party shall identify whether a disclosed expert is percipient, retained, or both . . . .

---

[1] Plaintiff initiated this action with his wife, Celia Bernal. (Doc. No. 1.) The court ruled on and dismissed Celia Bernal's claims. (*See* Doc. Nos. 32, 65.) Because the pending motions *in limine* pertain only to Plaintiff, the court does not recite the procedural history relating to Celia Bernal's claims in this order.

3

> Counsel are instructed to complete all discovery of expert witnesses in a timely manner in order to comply with the Court's deadline for filing dispositive motions.

(Doc. No. 4 at 3–4.)

On November 24, 2019, Plaintiff filed his first amended complaint. (Doc. No. 11.) On March 12, 2020, the court modified the scheduling order pursuant to a stipulation by the parties and extended the expert disclosure deadline to December 4, 2020, the supplemental expert disclosures deadline to January 4, 2021, and the deadline for completing expert discovery to February 3, 2021. (Doc. No. 17 at 4.)

On December 4, 2020, the date expert disclosures were due, Plaintiff emailed Defendants "[four] documents that constitute the required disclosure for Roger Clark to testify as an expert in police practices in this case." (Doc. No. 84-1 at 101.) That same day, Defendants served Plaintiff with their expert disclosures, identifying two retained experts: Robert Fonzi, an expert in police practices, procedures, and training; and Dr. Peter Salamon, a physician who "will offer opinions regarding his review of past medical records pertaining to the treatment of [Plaintiff, his] medical examination of [Plaintiff,] the need for future care and the cost of that care." (*Id*. at 10, 12.) Defendants' expert disclosures also identified Dr. Guy Guilfoy, M.D. as a non-retained expert, stating in their disclosures that:

> Dr. Guilfoy was deposed in this case. He is a prior treating physician who examined, treated, and followed Mr. Bernal. Dr. Guilfoy operated on Mr. Bernal several times before and after the incident that is the subject of the Plaintiff's complaint. He is expected to testify regarding Mr. Bernal's pre-incident and post incident orthopedic conditions, Mr. Bernal's medical history and treatment.

(*Id*. at 11.) As part of their disclosures, Defendants also included a report by Dr. Salamon outlining his opinion regarding the causation of Plaintiff's injuries. (Doc. No. 84-1 at 83–87.)

On January 4, 2021, the deadline for supplemental disclosures, Plaintiff disclosed for the first time the following nine treating physicians and providers as non-retained experts: (1) Guy Gilfoy, M.D., (2) Christopher O. Neuberger, M.D., (3) Thong D. Tram, DO, (4) Suzanne

Cardenas,[2] (5) Tallie Wood-Miller, (6) Kristine Bizal, (7) Robert L. Cameto, M.D., (8) Kamran Ahmed, M.D., and (9) Toni J. Horvath, LMFT. (Doc. No. 84-1 at 105–110.)

As relevant to the pending motion, Plaintiff reported Dr. Guilfoy "[w]ill testify as to [Plaintiff's] medical conditions both pre and post incident, as well as treatment provided." (*Id.* at 106.) Dr. Neuberger "[w]ill testify as to [Plaintiff's] medical conditions both pre and post incident, as well as treatment provided." (*Id.*) Dr. Tram "[w]ill testify as to [Plaintiff's] recovery from pre-incident surgeries as well as documentation of his post-incident status, including recommendations for treatment, observed results from such treatment, and in general the history of [Plaintiff's] medical conditions over the past 10+ years." (*Id.* at 107.) Lastly, Plaintiff noted Ms. Cardenas is a Pilates instructor "who observed [Plaintiff's] recovery from injuries sustained during [his] career, the setback that occurred because of the incident, and the improvements since the incident." (*Id.*)

On October 21, 2024, the court set a final pretrial conference for January 10, 2025. (Doc. No. 77.) However, that conference was converted to a status conference because Plaintiff failed to timely file his requisite pretrial statement.[3] (Doc. No. 80.) At the January 10, 2025 status conference, Plaintiff raised for the first time that he intended to file a motion to reopen expert discovery for the purpose of disclosing an expert regarding causation. (Doc. No. 81.) The court set a briefing schedule for Plaintiff's anticipated motion and Defendants' opposition thereto. (*Id.*) The court also set a final pretrial conference and ordered the parties to file a joint pretrial statement by no later than January 22, 2025. (*Id.*)

On January 22, 2025, the parties filed a joint pretrial statement pursuant to the court's order. (Doc. No. 82.) Therein, Plaintiff listed Drs. Guilfoy, Tram, and Neuberger as percipient and non-retained expert witnesses for trial. (*Id.* at 6–7.) Plaintiff listed Ms. Cardenas as a percipient witness for trial. (*Id.* at 6.) Additionally, Plaintiff noted he intended to call as a witness

---

[2] The court notes that in Plaintiff's supplemental expert witness disclosure, he identifies the witness's last name as Cardenes. (*See* Doc. 108 at 4.) However, in the joint pretrial statement and amended joint pretrial statement, he identifies her last name as Cardenas. (*See* Doc. Nos. 82, 87.) For purposes of this order, the court will identify the witness's last name as Cardenas.

[3] On October 15, 2024, this case was reassigned to the undersigned district judge. (Doc. No. 76.)

5

an "Additional Retained Medical Causation Expert if permitted." (*Id*. at 7.)

That same day, Plaintiff filed a motion to modify the scheduling order to reopen expert discovery, specifically to permit Plaintiff to retain and disclose a medical expert witness to opine on the issue of causation of Plaintiff's injuries. (Doc. No. 83.) On February 10, 2025, Defendants filed an opposition to Plaintiff's motion. (Doc. No. 84.) On February 25, 2025, the court issued an order denying Plaintiff's motion to modify the scheduling order to reopen expert discovery. (Doc. No. 86.) The court concluded Plaintiff had not demonstrated good cause to modify the scheduling order to reopen expert discovery. (*Id*.)

At the court's direction, the parties filed an amended joint pretrial statement on February 28, 2025. (Doc. Nos. 85, 87.) Therein, Plaintiff again listed Drs. Guilfoy, Tram, and Neuberger as percipient and non-retained expert witnesses for trial, and Ms. Cardenas as a percipient witness for trial. [4] (Doc. No. 87 at 7.) Plaintiff noted that if permitted, he intends to call as a witness an "Additional Retained Medical Causation Expert." (*Id*.)

2. Discussion

In Defendants' motion *in limine* No. 2, Defendants request the court exclude or limit expert testimony from Drs. Tram, Neuberger, and Ms. Cardenas because Plaintiff did not properly disclose experts to Defendants pursuant to Federal Rule of Civil Procedure 26. (Doc. No. 100 at 2–3.) Defendants also request the court preclude Dr. Guilfoy from offering opinions related to causation. (*Id*. at 4.) Defendants concede Plaintiff is permitted to call Dr. Guilfoy because he was identified on their witness list, but Defendants argue Dr. Guilfoy's testimony should be limited because he was not identified as a retained expert by Plaintiff and was not identified as a witness who would be called to provide testimony on causation. (*Id*. at 4.)

In opposition and at the hearing, Plaintiff argues that he disclosed his treating physicians/provider as expert witnesses because he provided their information in his supplemental

---

[4] Although Plaintiff lists Ms. Cardenas on his supplemental expert witness disclosure, he lists her only as a percipient witness on the amended joint pretrial statement. (Doc. Nos. 87 at 7, 108 at 4.) As Defendants' motion *in limine* seeks to exclude Ms. Cardenas from providing expert testimony or preclude her from testifying regarding causation of any injuries, this order will assume that Plaintiff intends to elicit expert testimony from Ms. Cardenas at trial.

6

disclosures. (Doc. Nos. 114, 128.) However, the record demonstrates Plaintiff did not properly disclose these expert witnesses in his initial expert disclosures. While Plaintiff did list these witnesses in his supplemental expert witness disclosures, designating new experts in supplementary disclosures is improper. *See United States v. S. Cal. Edison*, No. 01-cv-05167-OWW-DLB, 2005 WL 8176350, at *4 (E.D. Cal. Mar. 24, 2005) ("Designating a new expert or new opinions after the disclosure deadline is not allowed."). On January 22, 2025, Plaintiff sought to modify the court's scheduling order to allow him to reopen expert discovery — recognizing he had not properly disclosed an expert witness who could opine on causation. (Doc. No. 83.) In his opposition to Defendants' motion *in limine,* Plaintiff asserts he "inadvertently omitted listing his treating physicians as non-retained experts during initial expert witness disclosures" but immediately corrected his mistake "in a late disclosure." (Doc. No. 114 at 2.) Thus, Plaintiff acknowledges he did not in fact timely disclose those witnesses as experts.

Generally, when a party fails to provide information in compliance with Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Among the factors the court may consider in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citation omitted).

The sanction of evidence exclusion is not mandatory under Rule 37(c)(1). *Bonzani v. Shinseki*, No. 11-cv-00007-EFB, 2014 WL 66529, at *3–5. (E.D. Cal. Jan. 8, 2014). Rather, a court's decision to exclude evidence is discretionary and a court possesses a "particularly wide

7

latitude . . . to issue sanctions under Rule 37(c)(1)." *Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175, 1178 (9th Cir. 2008) (quoting *Yeti by Molly, Ltd.*, 259 F.3d at 1106).

Here, Plaintiff did not disclose Drs. Tram, Neuberger, Guilfoy, and Ms. Cardenas as experts until approximately one month after such disclosures were due. Despite Plaintiff's untimeliness in the disclosures, the disclosures did provide Defendants "many of the facts and opinions to which [the expert witnesses] expect to testify." *Gorrell v. Sneath*, No. 12-cv-00554-JLT, 2013 WL 4517902, at *4 (E.D. Cal. Aug. 26, 2013). Because Plaintiff disclosed these experts to Defendants before the close of expert discovery, Defendants' prejudice or surprise is nominal.

Further, Plaintiff did not act in bad faith in his attempt to disclose Drs. Tram, Neuberger, Guilfoy, and Ms. Cardenas as expert witnesses. As noted above, Plaintiff asserts his failure to timely disclose expert witnesses was because his counsel "inadvertently omitted listing his treating physicians as non-retained experts during initial expert witness disclosures." (Doc. No. 114 at 2.) Plaintiff attempted, albeit improperly, to correct his deficient disclosures as soon as his counsel became aware of the error. (*Id*.) The court finds Plaintiff's month-long delay in disclosing expert witnesses does not rise to the level of bad faith or willfulness that warrants the harsh sanction of exclusion. *Cf. Christensen v. Goodman Distrib. Inc.*, No. 18-cv-02776-MCE-KJN, 2021 WL 71799, at *7 (E.D. Cal. Jan. 8, 2021) (imposing the "harsh sanction" of precluding a plaintiff's mental healthcare providers' expert testimony after repeated failures to provide compliant disclosures despite several extensions from the court and defendant).

The court emphasizes that Plaintiff's failure to timely and properly disclose his expert witnesses was not justified. Compliance with the Federal Rules and orders of this court are not optional. However, given that Plaintiff did not act in bad faith and disclosed his expert witnesses without undue delay, the court finds Plaintiff's error was harmless. Accordingly, Drs. Tram, Neuberger, Guilfoy, and Ms. Cardenas may provide expert testimony if deemed qualified at trial. Importantly, however, the scope of their testimony will be limited, as discussed below.

Rule 26 requires parties to provide a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C)(ii). "The purpose of Rule 26(a) is to

8

give enough information to help defendants determine whether this expert is worth deposing, or whether she is worth challenging as an expert." *Esquivil v. Hernandez*, No. 21-cv-01025-KJM-EPG, 2025 WL 2763975, at *1 (E.D. Cal. Sep. 29, 2025) (citing *Goodman v. Staples the Office Superstore LLC*, 644 F.3d 817, 821 (9th Cir. 2011)); *see Pineda v. City & Cnty. of San Franciso*, 280 F.R.D. 517, 523 (N.D. Cal. 2012) ("Without information as to the opinions Plaintiffs' non-retained expert witnesses are expected to testify to and the main facts on which these opinions are based, Defendant's ability to meaningfully depose or cross-examine these witnesses is undermined.").

Here, Plaintiff did not put Defendants on notice that he intended to elicit facts and opinions from the witnesses at issue as to causation as required by Rule 26. As noted above, he conceded as much when he attempted to reopen expert discovery to disclose an expert witness regarding medical causation. Importantly, Plaintiff's omission of this information was not harmless because it did not allow Defendants to "identify whether [they] need[ed] a responsive witness and the information that such responsive witness would need to address." *Cooke v. Town of Colo. City*, No. 10-cv-08105-PCT-JAT, 2013 WL 551508, at *4 (D. Ariz. Feb. 13, 2013). Therefore, Drs. Tram, Neuberger, Guilfoy, and Ms. Cardenas will not be permitted to opine on the cause of Plaintiff's injuries. *See Wishtoyo Found. v. United Water Conservation Dist.*, No. 16-cv-03869-DOC-PLA, 2017 WL 6940510, at *15 (C.D. Cal. Dec. 1, 2017) (excluding portions of a non-retained expert witness' testimony for a party's failure to properly disclose pursuant to Rule 26(a)(2)); *Stirm v. United States*, No. 22-cv-01330-CKD, 2025 WL 351044, at *2 (E.D. Cal. Jan. 31, 2025) (restricting causation opinions from a non-retained expert that was not properly disclosed).

Defendants also ask the court to exclude Drs. Tram, Neuberger, and Ms. Cardenas from providing testimony related to Plaintiff's treatment before and after the incident. (Doc. No. 100 at 3.) Defendants reason "such testimony is irrelevant without testimony regarding causation" and "would improperly permit the jury to infer that treatment was required because of [the] incident." (*Id.*) (emphasis removed). Defendants contend "any probative value of their testimony is outweighed by the unfair prejudice and risk of confusion to the jury under [Federal Rule of

9

Evidence] 403." (*Id*.) The court will reserve ruling on relevancy objections until trial when the court will have proper context to rule on such objections.

Therefore, Defendants' request that Drs. Tram, Neuberger, and Ms. Cardenas be excluded from providing expert testimony is denied. Upon proper showing that they are qualified to testify as expert witnesses, Plaintiff may elicit expert testimony from these witnesses consistent with the summary of the facts and opinions to which the witness is expected to testify as detailed in Plaintiff's supplemental disclosures. (*See* Doc. No. 84-1 at 106–08.)  However, those witnesses are precluded from testifying regarding the cause of Plaintiff's injuries. Accordingly, for the reasons provided above, Defendants' motion *in limine* No. 2 is granted in part and denied in part.

**B.**     **Defendants' Motion *in Limine* No. 4**

　　1.   Relevant Procedural Background

In Plaintiff's operative complaint, Plaintiff brought a federal claim under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights relating to his initial seizure and Defendants' use of force. (Doc. No. 11 at 1, 42–48.) Plaintiff also brought several state law claims against Defendants, including a false imprisonment claim. (*Id*. at 37–42.)

Defendants filed a timely motion for summary judgment for all of Plaintiff's claims, which the court granted on April 5, 2022. (Doc. Nos. 27, 32.) Therein, the court found that Defendants were entitled to judgment as a matter of law on Plaintiff's federal claims and declined to exercise supplemental jurisdiction over his pendent state law claims. (Doc. No. 32 at 5, 11.) On May 4, 2022, Plaintiff filed a notice of interlocutory appeal of the court's order granting summary judgment. (Doc. No. 34.)

On July 7, 2023, the Ninth Circuit issued an opinion affirming in part and reversing in part the district court's grant of summary judgment. (Doc. No. 65.) As to Plaintiff's claims, the Ninth Circuit reversed the district court's grant of summary judgment on Plaintiff's Fourth Amendment claims and reinstated his pendent state law claims. (*Id*. at 41.) In the opinion, the Ninth Circuit stated that it was "[u]ndisputed that [Plaintiff was] detained within the meaning of the Fourth Amendment" and "not arrested." (*Id*. at 14.) The Ninth Circuit held that Defendants "had limited authority to briefly detain and question [Plaintiff] . . . due primarily to the exigencies inherent in

preventing an imminent school shooting" and because Plaintiff's detention was brief, approximately twenty minutes. (*Id*. at 18–20.) However, the Ninth Circuit noted Defendants "exceeded this authority when they used a significant amount of force to restrain [Plaintiff] . . ." (*Id*. at 21.)

In considering Plaintiff's Fourth Amendment claim for excessive force, the Ninth Circuit found that the district court erred in granting summary judgment to Defendants by "disregarding genuine disputes of material fact" and additionally found that Defendants "used excessive force when they violently detained [Plaintiff]." (*Id*. at 37.) In viewing the facts in the light most favorable to Plaintiff, the Ninth Circuit found the nature and quality of Defendants' physical intrusion on Plaintiff's liberty, was "'simply too great' in the context of detaining a non-suspect witness." (*Id*. at 28) (quoting *Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996)).

On August 4, 2023, this court directed the parties to file a joint status report concerning how they anticipate the case should proceed on remand. (Doc. No. 55.) On September 5, 2023, the parties timely filed a joint status report. (Doc. No. 56.) Therein, Defendants contended "the only issue now to be tried before the [c]ourt is [Plaintiff's] Fourth Amendment excessive force claim and related state law claims—assault, battery, and Civil Code § 52.1." (*Id*. at 2.)

On January 22, 2025, the parties filed a joint pretrial statement that, among other things, identified the contested issues that remain in this case. (Doc. No. 82.) Plaintiff identified the following points of law to be addressed at trial:

> Plaintiff contends that force used to prevent the recording of the conduct of officers was unreasonable. Although the Ninth Circuit said that detention was permissible to try to speak to the Bernals, no level of force is permissible to prevent recording of the conduct directed towards Celia Bernal, nor is force permissible as retaliation for verbal challenge issued by William Bernal as to the officers' conduct towards Celia Bernal.

(*Id*. at 5.) Plaintiff submitted the same points of law in the parties' amended joint pretrial statement filed on February 28, 2025. (Doc. No. 87 at 5.) On March 12, 2025, the court issued a tentative pretrial order identifying, among other claims and defenses, a false imprisonment claim. (Doc. No. 89 at 6.) Two weeks later, Defendants filed objections to the court's tentative pretrial order, but they did not object to the court's identification of a false imprisonment claim as an

11

issue in this case. (Doc. No. 90.) On May 14, 2025, the court issued a final pretrial order that continued to identify a false imprisonment claim as an issue to be tried in this case and set a briefing schedule for the parties to file motions *in limine*. (Doc. No. 98 at 4.) Defendants now contend the inclusion of this claim in the final pretrial order is in error. (Doc. No. 124 at 1.)

### 2. Discussion

Defendants' motion in *limine* No. 4 seeks to exclude testimony related to the legality of Plaintiff's detention because they "successfully moved for summary judgment as to the legality of the detention" of Plaintiff and "the decision as to detention was affirmed by the Ninth Circuit." (Doc. No. 102 at 2.) Specifically, Defendants are "concerned that Plaintiffs may attempt to imply that law enforcement had no right to detain Plaintiff or his wife *at all*." (Doc. No. 129 at 3) (emphasis in original). Defendants seek to exclude this testimony pursuant to Federal Rules of Evidence 401 and 403, on the grounds that such evidence is not factually or legally relevant. (Doc. No. 102 at 1.)

Although Plaintiff opposes the motion, he asserts that he "will avoid arguing that [Defendants] didn't have the power to detain him as a witness." (Doc. 116 at 3.) Plaintiff further asserts that the facts relating to his detention are relevant and material to his false arrest theory, which he appears to be asserting pursuant to his false imprisonment claim.[5] (*Id.* at 4.)

As discussed above, the Ninth Circuit found the initial detention permissible, although only to a point. (*See* Doc. No. 65 at 21.) Therefore, the court finds that testimony regarding the legality of the initial detention is not a triable issue of fact. However, the Ninth Circuit noted several triable issues of fact regarding Plaintiff's excessive force claim, which included Defendants' use of force and restraint during Plaintiff's detention. The facts relating to Plaintiff's ongoing detention may be relevant to his excessive force claim even if the initial detention was lawful. Additionally, the facts relating to the detention may be relevant to Plaintiff's state law false imprisonment claim, which is a claim that remains in this case.

Therefore, Defendants' motion *in limine* No. 4 will be granted. Testimony related to the

---

[5] In their supplemental briefing, Defendants acknowledge that the issue of whether Defendants used excessive force against Plaintiff is "proper for adjudication by the jury." (Doc. No. 129 at 4.)

12

legality of the initial detention will not be permitted. The court orders the parties to meet and confer about whether a factual stipulation about the legality of the initial detention is appropriate.

**CONCLUSION**

For the reasons explained above:

1.    Defendants' motion *in limine* No. 2 (Doc. No. 100) is GRANTED in part and DENIED in part;

2.    Defendants' motion *in limine* No. 4 (Doc. No. 102) is GRANTED; and

3.    The parties are to meet and confer to determine if they can reach a stipulation to present to the jury relating to the legality of the initial detention. The written stipulation is to be filed with the court prior to the start of trial.

IT IS SO ORDERED.

Dated:    **February 19, 2026**                                     _____

Dena Coggins
United States District Judge

13